**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK, <br><br> Plaintiff, <br><br> v. <br><br> CENTERS FOR DISEASE CONTROL AND PREVENTION AND HEALTH AND HUMAN SERVICES, <br><br> Defendants. | Civil Action No. 1:21-cv-01179-RP |

**<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION..............................................................................................................................1

BACKGROUND ..............................................................................................................................1

     I.      CDC's V-safe Program...................................................................................................1

     II.     ICAN's FOIA Requests ...............................................................................................2

     III.    CDC's Responses to ICAN's FOIA Requests and ICAN's Challenges................................3

LEGAL STANDARD .......................................................................................................................4

ARGUMENT....................................................................................................................................5

     I.      The CDC Reasonably Construed ICAN's FOIA Request 21-01507........................................5

     II.     CDC Does Not Store or Retain Dashboard Data and Cannot, Therefore, Produce It....................................................................................................9

     III.    ICAN is Not Entitled to Access CDC's V-safe Dashboard......................................................13

CONCLUSION ................................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Aguiar v. Drug Enforcement Agency*,
   992 F.3d 1108 (D.C. Cir. 2021).................................................................................................10

*Anderson v. Department of State*,
   661 F. Supp. 2d 6 (D.D.C. 2009).................................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .........................................................................................................................4

*Assassination Archives & Research Center, Inc. v. Central Intelligence Agency*,
   720 F. Supp. 217 (D.D.C. 1989),
   *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990) .....................................6

*Brayton v. Office of Unitd States Trade Representative*,
   641 F.3d 521 (D.C. Cir. 2011).....................................................................................................4

*Brown v. Perez*,
   835 F.3d 1223 (10th Cir. 2016) ...............................................................................................12

*Celotex Corp. v. Catlett*,
   477 U.S. 317 (1986) .........................................................................................................................4

*Clemente v. Federal Bureau of Investigation*,
   867 F.3d 111 (D.C. Cir. 2017)......................................................................................................5

*CNN, Inc. v. Federal Bureau of Investigation*,
   271 F. Supp. 3d 108 (D.D.C. 2017)............................................................................................6

*Colgan v. Department of Justice*,
   No. 14-cv-740, 2020 WL 2043828 (D.D.C. April 28, 2020)..............................................10, 12

*Dale v. Internal Revenue Service*,
   238 F. Supp. 2d 99 (D.D.C. 2002)..............................................................................................6

*Freedom Watch, Inc. v. Dep't of State*,
   925 F. Supp. 2d 55 (D.D.C. 2013)..............................................................................................6

*James v. United States Secret Service*,
   811 F. Supp. 2d 351 (D.D.C. 2011),
   *aff'd*, No. 11-5299, 2012 WL 1935828 (D.C. Cir. May 11, 2012)................................11, 12

*Kissinger v. Reporters Committee for Freedom of the Press*,
   445 U.S. 136 (1980) ...............................................................................................................10, 12

*Knowles v. United States Department of State,*
   308 F. Supp. 3d 1 (D.D.C. 2018)......................................................................................13, 14

*Leopold v. Department of Justice,*
   301 F. Supp. 3d 13 (D.D.C. 2018)..........................................................................................6, 8, 9

*McClanahan v. Department of Justice,*
   712 F. App'x 6 (D.C. Cir. 2018) ..............................................................................................14

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981)..................................................................................................5

*Miller v. Casey,*
   730 F.2d 773 (D.C. Cir. 1984)..................................................................................................6

*Multi Ag. Media LLC v. United State Department of Agriculture,*
   515 F.3d 1224 (D.C. Cir. 2008)..............................................................................................5

*Nation Magazine, Washington Bureau v. United States Customs Service,*
   71 F.3d 885 (D.C. Cir. 1995) ..............................................................................................5, 6

*National Security Counselors v. Central Intelligence Agency,*
   960 F. Supp. 2d 101 (D.D.C. 2013)..........................................................................10, 11, 13

*National Labor Relations Board v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ..............................................................................................................12

*Oglesby v. Department of the Army,*
   920 F.2d 57 (D.C. Cir. 1990) ..................................................................................................5

*SafeCard Servs., Inc. v. Securities & Exchange Commission,*
   926 F.2d 1197 (D.C. Cir. 1991)..............................................................................................5

*Telematch, Inc. v. United States Department of Agriculture,*
   45 F.4th 343 (D.C. Cir. 2022)..................................................................................................5

*Washburn v. Harvey,*
   504 F.3d 505 (5th Cir. 2007)..................................................................................................4

*Weisberg v. Department of Justice,*
   627 F.2d 365 (D.C. Cir. 1980)..................................................................................................5

*Weisberg v. Department of Justice,*
   705 F.2d 1344 (D.C. Cir. 1983)..........................................................................................5, 12

*Yeager v. Drug Enforcement Agency,*
   678 F.2d 315 (D.C. Cir. 1982)..........................................................................................6, 10, 13

*Zemansky v. Environmental Protection Agency*,
   767 F.2d 569 (9th Cir. 1985)........................................................................................................5

**Statutes**

5 U.S.C. § 552...............................................................................................................................10

Pub. L. No. 110-234, 122 Stat. 923 (May 22, 2008) ....................................................................5

**Rules**

Fed. R. Civ. P. 56(a)......................................................................................................................4

**Regulations**

45 C.F.R. § 5.24(d) .......................................................................................................................14

**Other Authorities**

CDC, CDC, V-safe active surveillance for COVID-19 vaccine safety, (May 20, 2021)
   https://www.cdc.gov/vaccinesafety/pdf/V-safe-Protocol-508.pdf............................................2

CDC, V-Safe After Vaccination Health Checker, https://www.cdc.gov/coronavirus/2019-
   ncov/vaccines/safety/vsafe.html (Jan. 11, 2023) .....................................................................1

Fed. R. Civ. P. 56(a)......................................................................................................................1

## INTRODUCTION

In this Freedom of Information Act ("FOIA") case, Plaintiff Informed Consent Action Network ("ICAN") asks this Court to order two extraordinary forms of relief against Defendants the Centers for Disease Control and Prevention ("CDC") and the U.S. Department of Health and Human Services ("HHS"). First, ICAN seeks an order requiring CDC to produce all records related to a vaccine tracker program called V-safe, notwithstanding that such an order would require CDC to search at least 173 additional custodians and that CDC has already produced over 7,500 pages of records focused on a more well-defined version of that request. Second, ICAN asks that the Court order CDC to produce data related to a dashboard displaying summary V-safe information or otherwise provide ICAN with a log-in to a government system to monitor the dashboard, notwithstanding that the data has not been retained, and FOIA provides no right of access to government technology systems. ICAN is not entitled to either form of relief, and the Court should therefore grant summary judgment in favor of Defendants.

## BACKGROUND

### I.   CDC's V-safe Program

CDC's V-safe program began in December 2020 to monitor the safety of COVID-19 vaccines. Compl. for Decl. and Inj. Relief, ECF No. 1 ("Compl.") ¶ 3. V-safe is a smartphone app built by Oracle that allows vaccine recipients to "tell CDC about any side effects after getting the COVID-19 vaccine." Compl. ¶ 4 (quoting CDC, V-Safe After Vaccination Health Checker, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/vsafe.html (Jan. 11, 2023) (internal quotation marks omitted)). "Data submitted to V-safe by application participants (including data elements collected during registration, date and manufacturer of initial and additional doses, and in health surveys) is collected in a secure server housed in the Oracle Cloud Infrastructure U.S. Government Cloud tenancy and is Federal Risk and Authorization Management Program (FedRAMP)

approved." Ex. A, Decl. of Roger Andoh, FOIA Officer for the CDC and the Agency for Toxic Substances and Disease Registry ("Andoh Decl.") ¶ 25. CDC has worked with Oracle to provide these services since before the app launched in December 2020 and has continued to do so since then to effectively manage the V-safe program. *Id.* The purpose of the app "is to rapidly characterize the safety profile of COVID-19 vaccines when given outside a clinical trial setting and to detect and evaluate clinically important adverse events and safety issues that might impact policy or regulatory decisions." Compl. ¶ 4 (quoting CDC, V-safe active surveillance for COVID-19 vaccine safety (May 20, 2021), https://www.cdc.gov/vaccinesafety/pdf/V-safe-Protocol-508.pdf) (internal quotation marks omitted).

## II.    ICAN's FOIA Requests

ICAN's FOIA requests fall into two categories, both relating to CDC's V-safe app. The first category includes deidentified V-safe data. On June 24, 2021, the CDC FOIA Office received a request from ICAN for "[a]ll de-identified data submitted to v-safe since January 1, 2020." Andoh Decl. ¶ 4. CDC acknowledged receipt of that request on June 29, 2021, and assigned it request number 21-01506. *Id.* On September 1, 2021, the CDC FOIA Office received another related request from ICAN for "all data submitted to v-safe and subsequently deidentified for the CDC and/or Oracle from January 1, 2020 forward." *Id.* CDC acknowledged receipt of that request on September 3, 2021, and assigned it request number 21-02128. *Id.* That same day, however, CDC informed ICAN that it had administratively closed the September 1 request because it was duplicative of request 21-01506, *id.*, and ICAN does not challenge CDC's closure of request 21-02128.[1]

---

[1] ICAN later submitted yet another FOIA request to CDC requesting "[a]ll data submitted to v-safe since January 1, 2020," removing the "deidentified" qualifier from the request. Compl. ¶ 23, *ICAN v. CDC*, No. 1:22-cv-481 (W.D. Tex. May 17, 2022). That FOIA request is now the subject of separate litigation pending before this Court and is not at issue in this case. *See generally id.*

The second category includes policies, procedures, and processes related to V-safe data.  On June 24, 2021, the CDC FOIA Office received a request from ICAN for "[a]ll documents concerning v-safe data including but not limited to policies, procedures, processes related to v-safe, and communications regarding same."  *Id.* ¶ 5.  CDC acknowledged receipt of that request on June 29, 2021, and assigned it request number 21-01507.  *Id.*

### III.    CDC's Responses to ICAN's FOIA Requests and ICAN's Challenges

Approximately one month after ICAN submitted its FOIA request 21-01506 for deidentified V-safe data, CDC informed ICAN that a search failed to locate any responsive documents, as the information submitted via the V-safe application was not de-identified.  *Id.* ¶ 4.  On August 25, 2021, ICAN submitted an appeal to the HHS Office of the Assistant Secretary for Public Affairs ("ASPA") contesting the adequacy of the search.  *Id.*  ICAN then filed this suit on December 28, 2021.  *See generally* Compl.  CDC subsequently released to ICAN a 39-page document, without redactions, consisting of a tracking spreadsheet containing V-safe cumulative numbers that ranged from December 14, 2020 through February 23, 2022.  Andoh Decl. ¶ 12.  CDC found no further deidentified data responsive to the request.  *Id.*

Approximately one month after ICAN submitted its separate FOIA request 21-01507 for policies, procedures, and processes related to V-safe data, CDC informed ICAN that CDC had located 61 pages of responsive records and one Excel spreadsheet and released those documents, without redactions, to ICAN.  *Id.* ¶ 6.  ICAN then filed an appeal with ASPA contesting the adequacy of the search.  *Id.* ¶ 7.  After reviewing the appeal, the CDC FOIA Office asked that the FOIA request be remanded to the CDC FOIA Office for further search and processing, and this was done on December 14, 2021, shortly before ICAN filed this suit.  *Id.*

Upon remand and in the context of this case, CDC expanded its search, using additional search terms and custodians.  *Id.* ¶ 8.  CDC interpreted the request as seeking records concerning policies,

3

procedures, and processes related to V-safe data—not all records related to V-safe data. *Id.* ¶ 6.  It made this determination because to search for all records related to V-safe data would have been overbroad and unduly burdensome, and if CDC had interpreted the request that way, it would have had to reject it in its entirety for those reasons. *Id.*  In total, CDC ended up producing over 7,500 pages of responsive records, withholding certain information pursuant to FOIA Exemptions 4, 5, and 6. *Id.* ¶¶ 12, 17, 18.  Following a lengthy conferral process, ICAN informed Defendants that it would not challenge any of CDC's remaining withholdings.   Instead, ICAN challenges (1) CDC's interpretation of ICAN's FOIA request 21-01507 for policies, procedures, and processes related to V-safe data, and (2) the non-existence of V-safe Dashboard data pertaining to request 21-01506.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . 'the affidavits,' . . . which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex*, 477 U.S. at 323.  A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal citations and quotations omitted).

The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  An agency is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search

for responsive records, and each responsive record that it has located either has been produced to the plaintiff or is exempt from disclosure. *See Weisberg v. DOJ*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See Multi Ag. Media LLC v. U.S. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008), *superseded by statute on other grounds*, Energy Act of 2008, Pub. L. No. 110-234, § 1619, 122 Stat. 923, 1022–23, *as recognized in Telematch, Inc. v. USDA*, 45 F.4th 343 (D.C. Cir. 2022); *see also SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991); *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

An agency is entitled to summary judgment in a FOIA case with respect to the adequacy of its search if it shows "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), *denying rehearing en banc*, 714 F. App'x 2 (D.C. Cir. 2018)) (internal quotation marks omitted). An agency may demonstrate that it has conducted an adequate search by submitting "in good faith" "reasonably detailed, non-conclusory affidavits depicting adequate searches for the documents requested." *Zemansky v. EPA*, 767 F.2d 569, 571, 574 (9th Cir. 1985). Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc.*, 926 F.2d at 1200 (citation omitted).

**ARGUMENT**

I.   **The CDC Reasonably Construed ICAN's FOIA Request 21-01507.**

An agency has a "duty to construe a FOIA request liberally," *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), but the agency is also "bound to read [the request] as drafted, not as either agency officials or [the requester] might wish it was drafted," *Miller v. Casey*, 730

5

F.2d 773, 774, 777 (D.C. Cir. 1984). It is well-established that a FOIA requester has the burden to "'reasonably describe[]' the records sought." *Nation Mag.*, 71 F.3d at 890 (quoting 5 U.S.C. § 552(a)(3)). "The linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested,'" *Yeager v. Drug Enf't Agency*, 678 F.2d 315, 326 (D.C. Cir. 1982) (citation omitted), with the responsibility firmly on the requester "to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome," *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989), *aff'd*, No. 89-5414, 1990 WL 123924 (D.C. Cir. Aug. 13, 1990). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Id.*

Accordingly, "an agency need not honor a FOIA request that requires it to conduct an unduly burdensome search." *Anderson v. Dep't of State*, 661 F. Supp. 2d 6, 12 n.3 (D.D.C. 2009); *see, e.g., Leopold v. DOJ*, 301 F. Supp. 3d 13, 23 (D.D.C. 2018); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (finding FOIA requests were "invalid *ab initio*" because "requests ask[ing] for 'all' records" relating to certain subject areas lacked "specificity and were thus fatally overbroad and burdensome"); *CNN, Inc. v. FBI*, 271 F. Supp. 3d 108, 110, 112 (D.D.C. 2017) (holding that a request for "[a]ny and all documents and records" relating to memoranda written by former FBI Director Comey was fatally overbroad); *Dale v. IRS*, 238 F. Supp. 2d 99, 104–05 (D.D.C. 2002) (A FOIA request for "'*any* and *all* documents . . . that refer or relate in any way to'" the subject did "not describe the records sought with 'reasonably sufficient detail'" and thus "was deficient.").

ICAN requested "[a]ll documents concerning v-safe data including but not limited to policies, procedures, [and] processes related to v-safe, and communications regarding same." Compl. ¶ 10. ICAN claims that CDC's search for responsive records was inadequate because it limited the scope of this request to the "including" clause—that is, to policies, procedures, and processes related to V-safe, and communications regarding V-safe policies, procedures, and processes. CDC agrees that taken

6

literally and without context, the plain text of ICAN's request would call for any record concerning V-safe data. But such a literal construction would be overly broad, unduly burdensome, and inadequate to describe the records sought, such that CDC would have been unable to craft a reasonable search.

As an initial matter, CDC conducted a comprehensive search for all V-safe policies, procedures, and processes related to V-safe, and communications regarding V-safe policies, procedures, and processes—subjects that are themselves quite broad. The search included the V-safe Pregnancy Registry, the Call Center, follow-up communications regarding the V-safe application, communication regarding the Vaccine Adverse Event Reporting System ("VAERS"), and documents related to V-safe policies, procedures, and processes. Andoh Decl. ¶¶ 14–16. And the search uncovered all documents and communications concerning the policies, procedures, and processes related to "v-safe data," since the V-safe application was "set-up to collect and track the data submitted by V-safe participants." *Id.* ¶ 19.

An even broader search for "all documents and communications concerning [V-safe data]" would have been tantamount to a search for all documents about V-safe, which would have been unreasonably broad and burdensome. *Id.* (explaining that "[t]he V-safe program is fundamentally a data collection program so to search for every record relating to V-safe data, in effect, would mean CDC would need to search for every single record containing the word V-safe"). CDC estimates that if it were to expand the scope as ICAN suggests, it would need to search 173 CDC employees' emails. *Id.* ¶ 21. The 48 employees of the Immunization Safety Office ("ISO"), within the National Center for Emerging and Zoonotic Infections Diseases ("NCEZID"), would need to be searched because ISO developed the V-safe app and continues to monitor and maintain it. *Id.* ¶¶ 6, 21. An additional 125 CDC employees would need to be searched who worked on various programs related to V-safe such as the V-safe Pregnancy Registry, the Call Center, and the Vaccine Task Force, as well as certain

7

CDC employees who were deployed to CDC's Emergency Operations Center. *Id.* ¶ 21. Moreover, the burden on CDC will be heightened because the CDC expects that the search term "Vsafe" will yield an extremely high number of responsive documents that will all need to be reviewed. *Id.* All of this content is only "peripherally related to V-safe application system," *id.* ¶ 20, because "[t]hese records and most of the activities related to these projects are separate from the V-safe application," *id.* ¶ 21.

Where, as here, a literal reading of a FOIA request would be overly broad, unduly burdensome, and not reasonably describe the records sought, the agency may apply a narrowing construction. That is what the court held in *Leopold*, 301 F. Supp. 3d at 23–25, in which an agency also limited a FOIA request that would have been overly broad if construed literally to its "including" clause. So, too, here, the Court should uphold CDC's construction of FOIA request 21-01507.

During the parties' meet and confer, ICAN singled out two categories of documents not specifically related to V-safe policies, procedures, and processes that it claims CDC should have searched for and produced: (1) records of active telephone follow-up by CDC for reports of medically attended health impact events and Vaccine Adverse Event Reporting System ("VAERS") follow-ups and (2) individual registrant data. But these categories of records are only tangentially related to the V-safe application and thus demonstrate the overbreadth of a literal construction of FOIA request 21-01507. VAERS is "a separate surveillance system," established in 1990, that is "co-managed by CDC and the Food and Drug Administration." Andoh Decl. ¶ 22. The connection between V-safe and VAERS is merely that if a V-safe participant or their dependent reports a medically attended health impact event during a V-safe check-in, Call Center staff call the person to solicit completion of a VAERS report. *Id.* VAERS reports are "processed, handled, stored, and accessed in accordance with existing approved VAERS procedures and policies" that are separate from those pertaining to V-safe, and the follow-up is handled by a federal contractor—General Dynamics Information

Technology, Inc. ("GDIT")—not by CDC. *Id.* "As of February 26, 2023, GDIT had conducted follow-up calls for 1.18 million reports of medically attended events as reported by V-safe application participants in the health check-in surveys." *Id.* CDC was not required to search for and produce these reports because VAERS is a separate program from the V-safe app.

And although CDC searched for and produced over thirty records regarding individual registrants related to V-safe policies, procedures, and processes, *see id.* ¶ 23, expanding this search to every record pertaining to every individual V-safe registrant would have been unreasonably broad and burdensome. As of July 2022, over ten million people had registered with V-safe. *Id.*

In short, CDC did not search for documents related to these two topics because they "are not related to V-safe program policies, processes, or procedures." *Id.* ¶ 22. Literally defined, ICAN's search would have encompassed far more than these two topics and included topics even farther afield from the V-safe program, demonstrating why CDC imposed reasonable limitations on its search.

## II.    CDC Does Not Store or Retain Dashboard Data and Cannot, Therefore, Produce It.

ICAN contends that, in response to its FOIA request 21-01506 for "[a]ll de-identified data submitted to v-safe since January 1, 2020," CDC should have produced data related to a summary tracker of information known as the "V-safe Dashboard" or the "Dashboard." "Data submitted to V-safe by application participants (including data elements collected during registration, date and manufacturer of initial and additional doses, and in health surveys) is collected in a secure server housed in the Oracle Cloud Infrastructure U.S. Government Cloud tenancy and is Federal Risk and Authorization Management Program (FedRAMP) approved." *Id.* ¶ 25. One feature of the cloud infrastructure managed by Oracle is the Dashboard, which was created by Oracle for CDC's use. Defendants hereby submit a declaration from Oracle Senior Developer and Engineering Manager Matthew Cardozo explaining how the Dashboard functions. *See* Ex. B, Decl. of Matthew Cardozo ("Cardozo Decl."). Mr. Cardozo is an Engineering Manager at Oracle. *Id.* ¶ 2. Since November 2020,

part of his work has "involved the development of . . . 'v-safe.'" *Id.* He is therefore personally familiar with the V-safe application. As Mr. Cardozo explains, "[t]he Dashboard is a display that allows CDC staff to see certain high-level summary information about the data tracked by the v-safe program." *Id.* ¶ 3. The Dashboard displays counts for the metrics such as registrant type, dose number, registrants with at least one health check-in survey completed, total health check-in surveys completed, and potential pregnancies. *Id.* ¶ 3, Fig. 1. For each of these metrics, counts are available for distinct time periods. *Id.*

The Dashboard is not, however, a record subject to FOIA. FOIA provides that, "[i]n making any record available to a person . . ., an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). However, FOIA only obligates an agency to disclose those records "which it in fact has created *and retained.*" *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980) (emphasis added); *accord Aguiar v. DEA*, 992 F.3d 1108, 1112 (D.C. Cir. 2021); *Yeager*, 678 F.2d at 321; *see also* 5 U.S.C. § 552(f)(2) (a "record" includes "any information that would be an agency record . . . when *maintained* by an agency in any format, including an electronic format." (emphasis added)). "Unless [an] agency in some way 'retains' [a] unique aggregation of data" created by a database query, "that record, in its unique form, is not preserved in the agency's electronic version of a file cabinet," and thus cannot be produced under FOIA. *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 160 n.28 (D.D.C. 2013); *see, e.g., Colgan v. DOJ*, No. 14-cv-740, 2020 WL 2043828, at *10 (D.D.C. April 28, 2020) (finding that the "temporary storage" of data to display a search screen did "not constitute retention of a record," and thus "the search screen was not simply another 'form or format' of an *already maintained record*" (emphasis added)).

Here, CDC searched for records pertaining to the Dashboard and found and produced a single 39-page spreadsheet in which a CDC employee had recorded certain information from the Dashboard

between December 14, 2020 and February 23, 2022. Andoh Decl. ¶ 12. As Defendants have explained to ICAN in letters and other communications dating back to February 2022, neither CDC nor Oracle stores, records, archives, or retains the information displayed on the Dashboard at any point in time, nor are they required to do so. There is therefore nothing either CDC or Oracle has in its possession, custody, or control to produce in response to ICAN's FOIA request. As Oracle explains,

> The Dashboard data only describe at a high level certain information about the nature and quantity of the underlying data that the v-safe program has tracked, collected, and stored in the application's cloud-based environment; as such, the Dashboard data exists independent of the underlying data it describes. The Dashboard displays summary information, typically numbers, that describe the data in some fashion. . . . The Dashboard information re-generates every two hours over the course of a day, although some of the information in the Dashboard is based on totals from the v-safe data as of the previous day. Therefore, some of the data displayed on the Dashboard may be as old as one day old at any given time. When the Dashboard refreshes, the summary information in the Dashboard gets replaced by newly generated information.

*Id.* ¶ 3–4. The upshot of this is that "[t]he replaced information does not get archived or stored at Oracle or in the cloud environment where v-safe resides." *Id.* ¶ 4. Moreover, "The Dashboard is also built such that CDC cannot view, download, print, or otherwise save or capture the data that was previously displayed on the Dashboard prior to being refreshed." *Id.*; *see also* Andoh Decl. ¶ 26 ("The dashboard was developed so that the CDC has only 'read' access to viewing the dashboard. It does not provide functionality that would allow CDC to print a copy of what is displayed on the dashboard or to save the information displayed on the screen."). In other words, neither CDC nor Oracle possesses any data related to the Dashboard in any format, and there is therefore nothing to produce to ICAN. "Unless the agency in some way 'retains' the unique aggregation of data, . . . that record, in its unique form, is not preserved in the agency's electronic version of a file cabinet" and therefore need not be produced under FOIA. *Nat'l Sec. Couns.*, 960 F. Supp. 2d at 160 n.28; *see also James v. U.S. Secret Serv.*, 811 F. Supp. 2d 351, 358 (D.D.C. 2011), *aff'd*, No. 11-5299, 2012 WL 1935828 (D.C. Cir. May 11, 2012) (*per curiam*) ("An agency does not control a record which has been destroyed, . . . and it

11

is under no obligation to obtain a duplicate of or to re-create a record in order to fulfill a FOIA request." (citations omitted)).

Moreover, to the extent ICAN claims that CDC was required by FOIA to create unique records in some way capturing the Dashboard data that it would not have otherwise done, such as by taking screenshots of the Dashboard and producing those to ICAN, that argument is meritless. As an initial matter, CDC has no way to print, save, or capture the data displayed. Cardozo Decl. ¶ 4; Andoh Decl. ¶ 26. In addition, FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and maintained." *Kissinger*, 445 U.S. at 152; *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975); *Weisberg*, 705 F.2d at 1363 ("The Supreme Court . . . has made clear that FOIA puts an agency under no obligation to create documents[.]") (citation omitted); *Brown v. Perez*, 835 F.3d 1223, 1237 (10th Cir. 2016) ("There is no contrary evidence that these images were electronically stored in such a way that would enable their recovery. Therefore, for the government to produce the requested printouts, it would have to open the software, input the relevant data, and recreate a screen image that could be captured and produced. Because FOIA does not require an agency to create records, the agency need not undertake that process."); *Colgan*, 2020 WL 2043828, at *10 ("For the government to produce the requested screenshots, it would have to open the software and create a screenshot, which would not otherwise exist from the last time the agency opened the software to the search screen. FOIA imposes no such duty on agencies. . . . Thus, the FBI need not make new screenshots and produce them.").

Because the CDC does not have any data generated by the Dashboard and that data is not backed up, stored, or archived anywhere, as attested to by an Oracle engineer who personally developed the software and also by CDC, CDC has nothing to provide to ICAN apart from the 39-page spreadsheet in which a CDC employee happened to transcribe some of the data, which CDC has

already produced in full. *See Yeager*, 678 F.2d at 321–23 (A FOIA "requester must take the agency records as he finds them.").

### III.    ICAN is Not Entitled to Access CDC's V-safe Dashboard.

ICAN has suggested that if V-safe Dashboard data is not stored or archived and, therefore, cannot be produced, CDC should grant ICAN direct access to the Dashboard to permit ICAN to view the aggregation of data it displays at any given moment. That is not a remedy that is available to ICAN in this FOIA lawsuit. FOIA does not require the Government to grant requestors access to information technology systems. Moreover, any information ICAN would access in this way would, as described above, be current information that would not have existed at the time of ICAN's FOIA request.

In requesting that the CDC grant it a novel ongoing right of access to the V-safe Dashboard, ICAN assumes a statutory right "to requisition the resources of government agencies in a way that the FOIA did not intend." *Nat'l Sec. Couns.*, 960 F. Supp. 2d at 160 n.28. Although ICAN is not clear on the mechanism by which it requests access to the V-safe Dashboard, it appears to be seeking a personal log-in to a confidential Government information system. But as the court in *National Security Counselors* explained, "FOIA was intended to provide access to records held by federal agencies, nothing more." *Id.* More specifically, "FOIA was *not* intended to provide access to the mechanisms that agencies use to retrieve or aggregate information," nor was it "intended to permit the public to commandeer agency employees" or programs "as research assistants, including with respect to performing queries in electronic databases." *Id.*; *accord Knowles v. U.S Dep't of State*, 308 F. Supp. 3d 1, 8–9 (D.D.C. 2018). In any event, "[c]onfiguration of the web-based site permitting access to view the dashboard and conduct other functions (data download) does not allow account creation for e-mail domains beyond CDC staff and contractors. Therefore, it is not functionally possible to grant an external party access to this site." Andoh Decl. ¶ 27. Moreover, "[w]hile the dashboard view itself does not contain PII, providing

13

external parties access to a secure CDC system increases the risk that data and the PII contained within that data may be compromised.  CDC's risk-based security procedures require that access be limited only to those staff with a current business need for access." *Id.*

In addition, the cut-off date for ICAN's FOIA request for de-identified data was June 29, 2021, the date CDC began searching for responsive records.  *Id.* ¶ 4.  Any new aggregation of data that ICAN would have CDC create or provide access to now would not have existed as of June 29, 2021, and it is thus beyond the search cut-off date.  This is another reason that FOIA does not require CDC to provide ICAN with direct access to the V-safe Dashboard to allow it to view the real-time aggregate data created by Oracle's queries.  *See McClanahan v. DOJ*, 712 F. App'x 6, 9 (D.C. Cir. 2018) ("[Plaintiffs] advance no compelling case-specific reason to require the FBI to look for responsive records that came into its possession after it began searching."); *see also* 45 C.F.R. § 5.24(d) ("As the end or cut-off date for a records search, we use the date on which we first begin our search for documents responsive to your request, unless you specify an earlier cut-off date, or a specific date range for the records search. . . . The FOIA allows you to request existing agency records. The FOIA cannot be used to request records which the agency may create in the future in the course of carrying out its mission.").

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court enter summary judgment in their favor on all of ICAN's claims.

14

Dated: March 17, 2023                    Respectfully submitted,


                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         MARCIA BERMAN
                                         Assistant Branch Director
                                         Federal Programs Branch

                                         /s/ Christopher D. Edelman
                                         CHRISTOPHER D. EDELMAN
                                         (DC Bar No. 1033486)
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street N.W.
                                         Washington, DC 20005
                                         Phone: (202) 305-8659
                                         christopher.edelman@usdoj.gov

                                         *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Christopher D. Edelman, certify that on this day, March 17, 2023, I served a true and correct copy of the concurrently filed motion for summary judgment as well as the two accompanying exhibits on Plaintiff Informed Consent Action Network by emailing it to its counsel of record at the following email addresses:

Elizabeth Brehm
ebrehm@sirillp.com

Aaron Siri
aaron@sirillp.com

Colin Farnsworth
cfarnsworth@sirillp.com


/s/ Christopher D. Edelman
CHRISTOPHER D. EDELMAN
Trial Attorney

*Counsel for Defendants*

16