# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| INFORMED CONSENT ACTION NETWORK, | ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) | Civil Action No. 21-cv-01179-RP |
| CENTERS FOR DISEASE CONTROL AND PREVENTION, | ) ) ) | |
| *Defendants.* | ) | |

## DECLARATION OF ROGER ANDOH

Pursuant to 28 U.S.C. § 1746, I, Roger Andoh, declare the following to be a true and correct statement of facts to the best of my knowledge and belief:

1. I am the Freedom of Information Act ("FOIA") Officer for the Centers for Disease Control and Prevention ("CDC") and the Agency for Toxic Substances and Disease Registry ("ATSDR"), both agencies within the U.S. Department of Health and Human Services ("HHS"). I have held this position since June 26, 2016. I make this declaration based upon my personal knowledge and upon information available to me in my official capacity.

2. As the FOIA Officer, I supervise and direct the day-to-day activities of the CDC/ATSDR FOIA Office (hereinafter "CDC FOIA Office"). The CDC FOIA Office is the central office responsible for responding to requests for information under the FOIA for records from all operating divisions of the CDC and the ATSDR. FOIA requests are disseminated electronically to areas within the agency that are considered most likely to possess responsive records. In my position, I determine whether to release or withhold records, or portions of

records, in accordance with the FOIA and the HHS implementing regulations. I also coordinate efforts, as necessary, when one or more of the CDC Centers/Institutes/Offices or one of the ATSDR Divisions is involved in responding to a FOIA request.

3.    Due to the nature of my official duties, I am familiar with procedures followed by the CDC in responding to the FOIA request of Plaintiff, Informed Consent Action Network (hereinafter "Plaintiff"). This declaration explains the procedures that were followed in responding to Plaintiff's FOIA request and how the search for potentially responsive records was conducted.

## I. Administrative Processing of Plaintiff's Request

4.    On June 24, 2021, the CDC FOIA Office received a FOIA request from Plaintiff that sought "*All de-identified data submitted to v-safe since January 1, 2020.*" I acknowledged receipt of Plaintiff's FOIA request via a letter dated June 29, 2021, and assigned it request number 21-01506-FOIA. Although Plaintiff was initially informed in the acknowledgement letter that the search cut-off date for the request would be the date provided, since a search cut-off date was not provided by Plaintiff in the request, the search cut-off date applied was June 29, 2021, which is the date the search for responsive records began. The cut-off date that was applied was in accordance with the HHS FOIA Regulations (45 C.F.R. § 5.24(d)). On July 29, 2021, I provided a final response letter, informing Plaintiff that a search for records responsive to the request failed to reveal any documents, as the information submitted via the V-safe application was not de-identified. On August 25, 2021, Plaintiff filed an appeal with the HHS Office of the Assistant Secretary for Public Affairs ("ASPA") contesting the adequacy of the search. On September 1, 2021, the CDC FOIA Office received another FOIA request from Plaintiff that sought "*all data submitted to v-safe and subsequently deidentified by the CDC*

- 2 -

*and/or Oracle from January 1, 2020 forward.*"  Although I acknowledged receipt of Plaintiff's FOIA request via a letter dated September 3, 2021, and assigned it request number 21-02128-FOIA, that same day, I also informed Plaintiff via a second letter that this request was duplicative of the FOIA request Plaintiff submitted on June 24, 2021, assigned request number 21-01506-FOIA.  Therefore, request number 21-02128-FOIA was administratively closed as a duplicate request.  On January 4, 2022, I was informed by HHS ASPA that Plaintiff's appeal was administratively closed upon commencement of this FOIA litigation.

5.      On June 24, 2021, the CDC FOIA Office received a FOIA request from Plaintiff that sought the following categories of agency records: "*All documents concerning v-safe data including but not limited to policies, procedures, processes related to v-safe, and communications regarding same.*"  I acknowledged receipt of Plaintiff's FOIA request via a letter dated June 29, 2021, and assigned it request number 21-01507-FOIA.

6.      Upon receipt of Plaintiff's FOIA request number 21-01507-FOIA, I determined that a search for documents concerning "v-safe data" was limited to documents related to the V-safe application, an active surveillance system that began collecting data on December 14, 2020 as part of CDC's COVID response, as this is the program that was set-up to collect and track the data submitted by V-safe participants.  Furthermore, the scope was limited to those documents and communications that were related to the policies, procedures, and processes of the V-safe application, as stated in the Plaintiff's request, since a request seeking all records related to V-safe data would have to include hundreds of custodians and other CDC offices that were involved/engaged in V-safe related activities and projects.  A request for all records relating to V-safe data would have been denied as overly broad and unduly burdensome to search.  I then determined that the National Center for Emerging and Zoonotic Infectious Diseases ("NCEZID")

- 3 -

was the reasonably likely location for responsive records, since this is the CDC program office that developed the V-safe application and continues to monitor and maintain the system. The CDC FOIA Office requested that NCEZID initiate a search for potentially responsive records. Dr. Tom Shimabukuro, Vaccine Safety Team Lead, and Dr. Tanya R. Myers, Co-Team Lead, conducted the initial search as the subject matter experts ("SMEs"). They determined that responsive documents might be located in an assigned share folder which contained files within a secure network share drive that could be organized by subject, author, chronology, or file type depending on the preferences of the viewer. They located within this share drive documents related to V-safe data policies, procedures, and processes. They also determined that there were no other likely locations where responsive records would be kept. As a result of the search, NCEZID forwarded 61 pages of responsive records and one Excel spreadsheet to the CDC FOIA Office, which then released them to Plaintiff in full.

7.      Plaintiff subsequently submitted a letter of appeal to HHS ASPA challenging the adequacy of the search for records responsive to FOIA request number 21-01507-FOIA. Plaintiff asserted that because the CDC did not produce any communications in response to the FOIA request, the final response was inadequate. Upon review of the appeal, I asked that the FOIA request be remanded back to the CDC FOIA Office for further search and processing. On December 14, 2021, Plaintiff's appeal was administratively closed by HHS ASPA and remanded to the CDC FOIA Office for appropriate action.

8.      In response to Plaintiff's appeal regarding the adequacy of the search, I requested that NCEZID conduct an additional, broader search to capture all "communications" regarding V-safe policies, procedures, and processes. The NCEZID FOIA Coordinator, Ms. PerStephanie Thompson, identified three custodians involved with the V-safe application who would most

- 4 -

likely have responsive records: Dr. Tanya R. Myers (epidemiologist), Paige Marquez (senior statistician), and Dr. Anne Hause (V-safe team Co-Lead). These individuals were chosen because they worked on creating V-safe application policies, procedures, or processes, and were most likely to have all the information that would be responsive to the request. The NCEZID FOIA Coordinator sent a request for documents ("RFD") to the CDC's Information Technology ("IT") Team because the type of records Plaintiff sought were all accessible by running a search of Outlook mailboxes. During the timeframe of Plaintiff's FOIA request, most of the CDC staff were on full telework, and therefore, any records responsive to the request would have been entirely electronic. The RFD included the key terms "Vsafe," "Vsafe data," "Vsafe policies," "Vsafe procedures," and "Vsafe processes." The keywords were selected because they reflected the wording in Plaintiff's FOIA request. The date range for the search was January 1, 2020, through January 18, 2022.

9.      The CDC IT Team is centralized and in the unique strategic position to access the email mailboxes of all CDC staff. Through Microsoft Enterprise, a comprehensive platform that allows access to all Microsoft products, the CDC IT Team has the technological capability using the Microsoft Office 365 eDiscovery tool to search the mailboxes of multiple custodians at the same time and with multiple keywords. Through an agreement between the CDC FOIA Office and the CDC IT Team, when a FOIA request is appropriate for a Microsoft Enterprise or IT search, the CDC IT Team will run the search to avoid duplication of efforts and save CDC's resources. The CDC IT Team ran a search on the Outlook mailboxes of the three custodians identified for potentially responsive records. The search returned 10,604 records, however, after duplicates were removed, 4,420 records remained, which constituted approximately 9,157 pages that contained the term "vsafe*." However, only 582 of those records also contained the more

detailed terms of "vsafe data," "vsafe policies," "vsafe procedures," or "vsafe processes." (The use of an asterisk is a wildcard that allows them to locate results where the keyword term is found as well as records where that keyword is found followed by any additional characters. Therefore, a search using the term "Vsafe*" located records that include the term "vsafe," as well as records containing "vsafes," "vsafing," "vsafed," etc.)

10. Once the CDC FOIA Office received the results of the search, the records were then uploaded into the FOIAXpress system so that a FOIA Analyst could process the documents. The FOIAXpress system is an all-inclusive system that provides a FOIA Office with tools required to track, store, process, and manage documents responsive to a particular FOIA request in order to properly administer the FOIA program. Upon initial assessment of the results of the search, the CDC FOIA Office Analyst determined that the majority of the records were not responsive to the request. The majority of the records, although containing the word "vsafe," were not related to the policies, procedures, or processes of the V-safe application. Therefore, the CDC FOIA Office requested that NCEZID initiate a second search, more targeted search.

11. The CDC IT Team conducted a second search of the Outlook mailboxes of the three custodians, Paige L. Marquez, Dr. Tanya R. Myers, and Dr. Anne M. Hauser, and also included an additional custodian, Dr. Tom Shimabukuro (v-safe team Lead). The keywords used were "v-safe policies," "v-safe procedures," "v-safe processes," and "v-safe protocol." This search returned 174 records, which resulted in the identification of approximately 2,820 pages of potentially responsive records, which were subsequently uploaded in to the FOIAXpress system for processing. The documents were reviewed, and any duplicates or non-responsive records were removed.

12.     On March 15, 2022, I provided Plaintiff, via counsel, with an interim response to FOIA request number 21-01507-FOIA and released 1,235 pages of responsive records, some of which were withheld in full or in part pursuant to FOIA Exemptions 5 and 6.  On April 15, 2022, I provided Plaintiff, via counsel, with a final response to FOIA request number 21-01507-FOIA and released 1,404 pages, some of which were withheld in full or in part pursuant to FOIA Exemptions 5 and 6.  I also provided Plaintiff with a final response to FOIA request number 21-01506-FOIA and released a 39-page document, in full, consisting of a weekly tracking spreadsheet a CDC SME had assembled containing v-safe cumulative numbers that ranged from December 14, 2020, through February 23, 2022.

13.     I understand that a series of back-and-forth conversations between Plaintiff's and the CDC's attorneys then commenced regarding the scope of the search for documents responsive to FOIA request number 21-01507-FOIA, as well as the information withheld from the productions.  Based on these discussions, I agreed to re-review the exemptions applied to the documents and provide Plaintiff with draft *Vaughn* indexes corresponding to certain parts of the information withheld in an effort to mitigate any contested issues.  I understand that the parties engaged in further discussions concerning the withheld materials until Plaintiff indicated it would not challenge any of CDC's withholdings or redactions.  I also agreed to conduct additional searches, as needed, for documents responsive to FOIA request number 21-01507-FOIA.

14.     I conducted a manual review of the results of the first search that returned over 4,420 records, most of which only contained the word "vsafe," and extracted records that included information about the V-safe Pregnancy Registry, the Call Center, follow-up communications regarding the V-safe application, communication regarding the Vaccine

Adverse Event Reporting System ("VAERS"), and documents related to V-safe policies, procedures, and processes.  As I conducted the review, I determined that if an email or email string was found to be within scope, all attachments were considered within scope.  This manual review resulted in the identification of approximately 2,679 additional pages of potentially responsive documents, some of which were duplicates.

15.    I also requested that the CDC IT Team conduct a search of three additional custodians – Lakshmi Panagiotakopoulos, MD, Lead (former), Pregnancy Registry; Christine Olson, MD, Lead, Pregnancy Registry; and Julianne Gee, MPH – using the key words: "Vsafe," "Vsafe policies," "Vsafe procedures," "Vsafe processes," "V-safe protocol" and the date range January 1, 2020, through January 18, 2022.  This search returned 114 records, which resulted in the identification of approximately 721 pages of potentially responsive records.

16.    Additionally, the NCEZID ISO conducted a manual search of their internal share-points for any potentially responsive records related to the Call Center, scripts, Instagram reels, pregnancy protocol or SOW, as well as for all emails from/to/cc Tom Shimabukuro, Paige L. Marquez, Tanya R. Myers, and Anne M. Hauser using the key terms: "v-safe policies," "v-safe procedures," "v-safe processes," and "v-safe protocol."  This search returned approximately 324 records which resulted in the identification of approximately 3,752 pages of potentially responsive records, some of which were duplicates or non-responsive.

17.    On October 17, 2022, I provided Plaintiff, via counsel, with a supplemental production in response to FOIA request number 21-01507-FOIA that consisted of 4,768 pages, some of which were withheld in full or in part pursuant to FOIA Exemptions 4, 5 and 6.  The parties again engaged in further conversations, with Plaintiff providing the CDC FOIA Office with a detailed list of contested and missing items.  I agreed to re-review the exemptions applied

and provide Plaintiff with additional draft *Vaughn* indices to mitigate any outstanding contested issues. I also agreed to attempt to locate identified attachments that were not produced and versions of certain final documents. At the conclusion of a lengthy conferral process, I was able to address the majority of Plaintiff's concerns.

18. As a result of the initial searches and supplemental searches the CDC conducted, I have provided Plaintiff with over 7,504 pages of records responsive to FOIA request number 21-01507-FOIA.

### III. Scope of the Request

19. The CDC has produced all records that are within the scope of Plaintiff's FOIA request number 21-01507-FOIA. I am satisfied that the search for responsive records was adequate and that the proper interpretation of the scope of FOIA request number 21-01507-FOIA was applied when searching for and processing documents responsive to the request. I have determined that the reasonable interpretation of the scope of this FOIA request is to include all documents and communications concerning the policies, procedures, and processes related to the V-safe application. A search for documents concerning the V-safe smart application would uncover all documents concerning "v-safe data," as this is the program that was set-up to collect and track the data submitted by V-safe participants. The search, however, was limited in scope to include those documents and communications that were related to the V-safe application policies, procedures, and processes, as a search of these terms would return documents about how the V-safe application collects, processes and stores V-safe data. I understand that Plaintiff, however, contends that the scope of FOIA request number 21-01507-FOIA should not be limited by the terms "policies, procedures and processes" but rather should include all document related in any way to "V-safe" data. This interpretation of the scope of the request, however, is overly

broad. The V-safe program is fundamentally a data collection program, so to search for every record relating to V-safe data, in effect, would mean CDC would need to search for every single record containing the word V-safe. That would be unreasonably burdensome.

20. A search such as Plaintiff suggests would require the CDC to search programs and systems that are peripherally related to V-safe application system, as well as conduct a broad sweeping search for records in which the term "V-safe" was mentioned where the purpose of the record has nothing to do with the V-safe application system. A search of just the three originally identified custodians resulted in over 4,420 records with the term "V-safe." Many of these records were not related to the V-safe application or data, but rather were news clippings, meeting agendas, cover letters, and communications between the FOIA office and NCEZID/ISO related to request for documents (RFD). Additionally, over 6,000 of the documents returned from the search were duplicates, and I reasonably believe that any additional searches would continue to pull records that are duplicates of records already released to Plaintiff.

21. If I were to expand the scope of the search as Plaintiff suggests, then the number of custodians would significantly increase. I believe that many CDC employees who worked within the COVID-19 response may have documents that contain the word "v-safe" because the term "v-safe" encompasses records that are related to the V-safe Pregnancy Registry surveillance project, VAERS/FDA surveillance reports, Call Center follow-ups, and documents related to the V-safe Nested Case-Control study. These records and most of the activities related to these projects are separate from the V-safe application. The NCEZID alone consists of seven divisions with over 32 separate offices operating under those divisions. The Immunization Safety Office ("ISO"), the office within NCEZID where the V-safe Safety Team is located, currently consists of 48 employees. In addition, there are over 125 CDC employees who have deployed with the

CDC Emergency Operations Center ("EOC") to support the Vaccine Task Force on particular projects or activities.  Based just on these numbers, 173 custodians' emails would need to be searched, resulting in what I expect would be a vast number of records, most of which would not be responsive to Plaintiff's request or the V-safe application, but are rather related to other separate programs, such as VAERS, the V-safe Nested Case-Control study, and Call Center follow-ups, or are non-responsive records such as news clippings, meeting invitations, etc.  The burden is further heightened because I expect that the search term "Vsafe" will yield an extremely high number of responsive emails that CDC will have to process.

22.    I understand that, in support of Plaintiff's claim that the search was not adequate because the scope was not properly defined, Plaintiff has requested that the CDC produce certain records that are outside the scope of FOIA request number 21-01507-FOIA.  Plaintiff alleges that records of "*active telephone follow-up by CDC for reports of medically attended health impact events*," and "*VAERS follow-ups*" should have been searched for and produced.  However, these records are outside the scope of the request because these follow-up communications are not related to V-safe program policies, procedures, or processes.  Some of the V-safe application participants report that they sought medical care after vaccination which then leads to a referral to the Vaccine Adverse Event Reporting System ("VAERS"), a separate surveillance system that is co-managed by CDC and the Food and Drug Administration ("FDA").  The VAERS was established in 1990 and relies on individuals and providers to submit reports of post-vaccination health experiences to facilitate detection of unusual or unexpected patterns of adverse events that may indicate a possible safety problem with a vaccine.  Because awareness of VAERS is not widespread among the general population, the CDC created a mechanism for active outreach to V-safe application participants to solicit and facilitate reporting to VAERS.  If, during any V-

- 11 -

safe health check-in, a participant or their dependent reports a medically attended health impact event, including but not exclusive to requiring care in a hospital or emergency room setting, Call Center staff initiate active telephone follow-up to solicit completion of a VAERS report. The VAERS reports obtained during active telephone follow-up with V-safe application participants are processed, handled, stored, and accessed in accordance with existing approved VAERS procedures and policies. These telephone follow-up activities are carried out by General Dynamics Information Technology, Inc. ("GDIT"), a federal contractor hired by the CDC to administer the VAERS program, including the Call Center. As of February 26, 2023, GDIT had conducted follow-up calls for 1.18 million reports of medically attended events as reported by V-safe application participants in the health check-in surveys. These VAERS reports and subsequent follow-up communications are considered outside the scope of the request because the VAERS is a separate program from the V-safe application.

23.    Plaintiff also argues that records regarding "*individual registrants*" should have been produced. These records, however, are also beyond the scope of the request. The CDC has searched for and produced all documents and communications pertaining to individual registrants to the extent they relate to V-safe application policies, procedures, and processes. What CDC has not produced, and what I understand Plaintiff believes it should have produced, is any communications or other records concerning individual V-safe application participants and the data submitted to the V-safe application. The search that the CDC conducted included all key custodians that were involved in the development of policies, procedures, and/or processes related to the V-safe application. Therefore, these follow-up communications are outside the scope of the request. Additionally, some communications may have been excluded from the search because these responses were handled by other CDC offices that were not directly

involved with the V-safe application, such as the CDC Emergency Operations Center and CDC's National Contact Center ("CDC-INFO"). The V-safe application participants can request support from CDC-INFO by telephone or by completing a web-based form. The CDC-Info operators respond to basic V-safe enquiries using prepared responses; enquiries requiring additional technical expertise or unrelated to basic V-safe operation were routed from CDC-Info to a V-safe specific mailbox, eocevent523@cdc.gov. This V-safe specific mailbox was monitored by deployed CDC staff and V-safe team members, who provided additional troubleshooting advice directly to participants if needed. Because the main function of the mailbox was to address technical issues, any enquiries received therein related to V-safe policies, procedures, and processes, or specific to data were routed to a subject matter expert for a response. Therefore, any such emails that related to the V-safe application policies, procedures, and processes were captured during the search. Additionally, I understand that Plaintiff has argued that within the productions provided, there were almost no documents concerning individual registrants communicating with the CDC regarding some of the user data submitted via the V-safe application during health check-ins. However, a review of the productions provided to Plaintiff reveal many instances where such communications were released to Plaintiff. Examples of these communications can be found throughout the documents released to Plaintiff, including but not limited to pages 619-620; 625-626; 649; 651; 677-678; 683; 702; 939; 957; 963-964; 968; 971; 974-975; 983; 986; 994;1,001; 1,103; 1,006; 1,012; 1,018; 1,026; 1,036; 1,071; and 1,319; 1,321; 1825; 1,838-1,839; 1,927; 2,124; 2,357. As of July 2022, over 10 million persons were registered in the V-safe application since it launched in December 2020. As such, a search for all communication related to individual registrants would incredibly burdensome and time consuming.

**IV.  The Request for the V-Safe Dashboard is Not Reasonable**

24.      I understand that Plaintiff also contests the CDC's assertion that no additional records exist related to FOIA request number 21-01506-FOIA.  I have been informed that Plaintiff maintains that records of the daily display of the V-safe dashboard must be preserved in some way by the CDC or Oracle, although we have already informed Plaintiff, via counsel, that such records do not exist.  I understand that Plaintiff further insists that should such records not exist, CDC should give Plaintiff access to the V-safe dashboard to view the aggregate information generated there in real time.

25.      The Oracle Health Management System is a multi-functional COVID-19 response system built and donated to the U.S. Department of Health and Human Services to enable COVID-19 testing and monitor patients who participated in clinical trials for COVID-19 therapeutics after discharge from the hospital.  Upon recognizing that this system provided capabilities and technologies that could address CDC's desire to supplement existing vaccine safety systems with an active surveillance component, CDC and Oracle teams worked together to quickly develop the V-safe system.  Oracle used Application Express (APEX), a low-code application development platform within its cloud infrastructure to design and deploy V-safe. The V-safe application launched on December 13, 2020, in preparation for the start of COVID-19 vaccine distribution in the United States (December 14, 2020).   Data submitted to V-safe by application participants (including data elements collected during registration, date and manufacturer of initial and additional doses, and in health surveys) is collected in a secure server housed in the Oracle Cloud Infrastructure U.S. Government Cloud tenancy and is Federal Risk and Authorization Management Program (FedRAMP) approved (https://www.fedramp.gov).  I understand that Mr. Matthew Cardozo, an Engineering Manager at Oracle, is submitting a

- 14 -

separate declaration explaining how the dashboard functions. I have reviewed that declaration, and it matches my own understanding of how the dashboard works.

26.     The dashboard functionality was created to allow CDC to have a mechanism for real-time monitoring of metrics such as total numbers of doses entered by vaccine and total number of surveys completed; these metrics were used by the CDC to quickly understand participation levels in v-safe especially as the vaccine program was initially rolled-out and as additional doses were recommended (booster doses). The dashboard was developed so that the CDC has only "read" access to viewing the dashboard. It does not provide functionality that would allow CDC to print a copy of what is displayed on the dashboard or to save the information displayed on the screen. The only agency record of the data the dashboard displays was already provided to Plaintiff, as also referenced above in paragraph eleven. A CDC SME transcribed select numbers from the dashboard into an Excel spreadsheet as a quick means to monitor engagement and participation, including total doses by dose number and manufacturer. The spreadsheet allowed CDC to monitor growth in recorded doses, indicating that participants would be receiving surveys for these newly recorded doses. For example, when booster doses were first recommended, increased recording in the produced spreadsheet of doses 3 and 4 for mRNA vaccines provided reassurance that V-safe participants were recording subsequent doses of these vaccines and would be invited to complete surveys describing their health experiences after these doses. The CDC SME stopped transcribing data into this Excel spreadsheet at the end of December 2022. The aggregate numbers from dashboard displays are not used at CDC for analytic activities.

27.     The CDC is unable to grant Plaintiff access to the V-safe dashboard. Access rights to a web-based portal allows CDC staff to download V-safe data and to view the V-safe

dashboard created to monitor participation summaries in V-safe. CDC administrators control access to the portal and are responsible for addition or removal of users as needed by staff responsibilities. Once a CDC administrator has created an account for a staff person, two-factor authentication must be used by that staff person to access the portal. As an added layer of security, the portal is structured to only permit access by specific e-mail domains (e.g., @cdc.gov). Configuration of the web-based site permitting access to view the dashboard and conduct other functions (data download) does not allow account creation for e-mail domains beyond CDC staff and contractors. Therefore, it is not functionally possible to grant an external party access to this site. Additionally, while the dashboard view itself does not contain PII, providing external parties access to a secure CDC system increases the risk that data and the PII contained within that data may be compromised. CDC's risk-based security procedures require that access be limited only to those staff with a current business need for access. Furthermore, beyond the Excel spreadsheet provided to Plaintiff, the ISO does not have records related to dashboard content.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 17th day of March 2023.

_Roger Andoh_
_____
Roger Andoh
Freedom of Information Act Officer Centers for
Disease Control and Prevention Agency for Toxic
Substances and Disease Registry
United States Department of Health and
Human Services